IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

E.R.H., a minor child, by and through
Hailey Halmstad, his mother,

                     Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of
Social Security,

                  Defendant.

OPINION AND ORDER

20-cv-038-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff E.R.H ("ERH"), a minor child represented "by and through" his mother, Hailey Halmstad, seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. ERH contends that remand is warranted because the administrative law judge ("ALJ"): (1) erred by concluding that ERH's severe impairments did not meet or medically equal either Listing 101.18 (soft-tissue injuries) or 112.15 (trauma- or stressor-related disorders); (2) erred by failing to apply the correct legal standard under SSR 09-1p; (3) erred in making a disability funding which is not supported by substantial evidence of record; and (4) abused his discretion in assigning weight to medical opinions. For the reasons that follow, the court will affirm the denial of benefits.

FACTS[1]

## A.  Background

Plaintiff ERH was born on June 14, 2004, and applied for child's insurance benefits on March 27, 2014, claiming a disability onset date of January 7, 2014 -- the date of a tragic accident in which ERH caught his hand in a meat grinder, resulting in the amputation of all of his fingers on his right hand.  ERH was a school-aged child on the date his application was filed and an adolescent at the time of his final hearing before the ALJ. *See* 20 C.F.R. § 416.926a(g)(2).  ERH claimed disability based on his hand injury.  (AR 274.)

## B.  ALJ Decision

ALJ Michael Hellman held an evidentiary hearing via videoconference on March 15, 2019, at which plaintiff appeared personally, by his mother and counsel.[2]  As of the alleged onset date, the ALJ found that ERH had the following severe impairments:  post partial transmetacarpal amputation and post-traumatic stress disorder ("PTSD").  (AR 22.)  In so finding, the ALJ determined that ERH's post left radial fracture was a non-severe impairment because "there were no significant objective medical findings in the record to support more than minimal limitations on the claimant's ability arising from this

[1] The following facts are drawn from the administrative record (dkt. #7), including the ALJ hearing transcript (dkt. #16).

[2] This was the second of two video hearings with the same ALJ.  The first hearing was held on February 22, 2017.  After the ALJ issued an unfavorable decision, ERH appealed that denial, which the Appeals Council vacated and remanded for further consideration of ERH's PTSD diagnosis and possible mental impairments.  (PL.'s Br. (dkt. #9) 2 (citing AR 294-312, 320).)

impairment." (AR 23.) Specifically, the ALJ noted that while an August 2014 medical note mentioned a possible fracture, there was nothing in the record to suggest any limitations caused by this impairment lasted more than 12 months.

Next, the ALJ considered whether any of plaintiff's other impairments (or combination of impairments) met or medically equaled any of the listings. Material to this appeal, the ALJ considered whether plaintiff met Listing 112.15, which concerns trauma- and stressor-related disorders. In particular, the ALJ analyzed the "paragraph B" criteria to determine whether ERH had at least one extreme limitation or two marked limitations. The ALJ concluded that ERH had: mild limitations in understanding, remanding, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. However, because the ALJ concluded that ERH did not have at least two marked limitations or one extreme limitation, he found that the "paragraph B" criteria was not satisfied. As for the "paragraph C" criteria, the ALJ found that these were also not satisfied because the record did not establish that ERH had a "serious and persistent" mental disorder. (AR 23-24.)The ALJ also considered whether ERH met the requirements of Listing 101.08, which concerns soft tissue injuries, but found that the criteria were not met because the "record does not show a soft tissue injury to the body under continuing surgical management, as defined in 101.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." (AR 23.)

Having excluded the applicability of any specific listing, the remainder of the ALJ's opinion largely addressed whether ERH had an impairment or combination of impairments that *functionally equaled* the listings. In conducting this analysis, the ALJ considered six, specific domains of functioning, noting that he evaluated the "whole child" in making these findings and reviewed "all of the relevant evidence." (AR 24.) This evidence included ERH's testimony that: he is now 14-years-old and in the ninth grade; he receives average grades, consisting of mostly B's and C's, has not been held back in school, and receives no special services; he sees a physical therapist at school every month; he used to play hockey, but switched to playing basketball due to problems handling the stick; he does not have any friends and does not trust anyone because of being picked on and wronged by people in the past; he needs help with buttoning and using zippers; he can perform chores, but often is unable to complete tasks; he avoids social situations due to bullying; and he had difficulty concentrating in school. (AR 25.) ERH's mother also testified to her son's limitations: he takes tests in a separate room at school due to difficulty concentrating as a result of his PTSD; he used a myoelectric prosthesis for approximately one year but then stopped using it because he felt it was more of a hindrance; she helps him with personal care, dressing and food preparation; he has been unfairly treated by coaches and parents due to his impairment; and he avoids situations that remind him of the accident. (AR 25-26.) The ALJ also considered reports ERH's mother submitted describing his limitations, which appear to be largely consistent with her testimony during the hearing. As a whole, however, the ALJ found that ERH's and his mother's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the

4

medical evidence and other evidence in the record." In reaching this conclusion, the ALJ specifically noted educational and medical records show ERH had learned to be very independent with his one hand and residual use of his remaining limb to the point that he required minimal assistance, including riding a dirt bike, participating fulling in sports and working with his grandfather.  While educational records show that ERH tends to be disruptive and turns in work late, the ALJ noted they also show that he interacts well with his peers and strives to do well academically.  (AR 26.)  The ALJ also reviewed ERH's medical records, showing:  that he did well after surgery; was fitted for a prosthetic; and was still able to shoot a gun, ride a bike with modifications and play hockey and guitar. (AR 27.)  The ALJ next noted that ERH's right wrist and skin looked excellent in follow-up appointments; he had a surgical revision in May 2018 to address bone overgrowth; and no additional problems were documented after this surgery.  (AR 27.)  As for his mental health, the ALJ reviewed his treatment notes with Brad Grunert, Ph.D., who ERH started to see in March 2017.  Grunert worked on coping strategies relating to the accident and PTSD, showing improvement overtime, but also noting frustration with team sports and school difficulties.  (AR 27.)

The ALJ then reviewed the opinion evidence, giving some weight to those of the state agency's medical consultants, acknowledging that their opinions support a finding that the claimant has marked limitations in moving about and manipulating objects, but finding that the claimant is more limited than initially assessed by these doctors.  A(R 27-28.)  The ALJ gave "considerable weight" to the opinion of Dr. Grunert, who submitted a form indicating that claimant had mild limitations in understanding, remembering and

applying information and moderate limitations in interacting with others, maintaining concentration, persistence and pace and in adapting or managing oneself.  (AR 28.)  The ALJ specifically relied on Dr. Grunert *not* finding any marked or extreme limitations, and his acknowledgment that "the claimant has been able to maintain performance at a reasonable level, for the most part despite his limitations.  (*Id.*)  The ALJ also placed "considerable weight" on the opinion of Nicole Martinez, Ph.D., who similarly found that ERH had "less than marked limitations in all functional domains."  (*Id.*)  The ALJ specifically relied on Martinez's expertise in determining how to interpret the various IEPs in the record.   Related to the last observation, the ALJ placed only "some weight" on Cyd Campbell, M.D.'s opinions, specifically rejecting his opinion that ERH had marked limitations in attending and completing tasks as of February 2018, relying on Martinez and Grunert's findings as a basis to discount Campbell's opinion.  (*Id.*)  Finally, the ALJ placed "little weight" on the opinion of Michael Bentz, M.D., who opined that "the claimant would have long-term disability and substantial limitations," finding no indication that Dr. Bentz understood what disability means in the social security context.[3]

After reviewing this evidence, the ALJ considered each of the six functional domains. With respect to acquiring and using information, the ALJ concluded that ERH had less than marked limitations because (1) school records show that he was organized and knew how to locate items in a binder, and (2) he can play video games, work for his grandfather

---

[3] The ALJ also acknowledged that he reviewed questionnaires completed by ERH's teachers and by his mother and considered this evidence, although none of these individuals were acceptable medical sources.  (AR 29.)

and hunt with a gun.  (AR 30.)  For attending and completing tasks, the ALJ similarly found that ERH had less than marked limitations, despite school records showing disruptive behavior and difficulty staying on task, because he was able to play guitar and successfully hunt, including shooting six deer in 2016.  (AR 31-32.)  As for interacting and relating with others, the ALJ again concluded that ERH had less than marked limitations, despite counseling records and ERH's own testimony described bullying and anti-social behaviors, because his education records describe him as "very sociable and interacts well with peers."  (AR 33.)    While finding that ERH has adapted well to the loss of his hand, the ALJ concluded that he still has a marked limitation moving about and manipulating objects, specifically noting that he underwent a revision surgery in May 2018 and continues to struggle with chores, taking notes at school and certain everyday tasks.  (AR 33-34.)  While conceding that he may also need help with certain discrete activities, the ALJ next found that ERH  has less than a marked limitation in his ability to care for himself as a general matter.  (AR 35.)  Finally, the ALJ evaluated ERH's function with respect to health and physical well-being, again finding that he has less than marked limitations. Specifically, the ALJ noted ERH's few complaints of pain, ability to dress and wash his hair, and evidence that he is quite active, including playing basketball and participating in cross-country running.  (AR 36.)

Because the ALJ did not find at least two marked limitations or one extreme limitation, the ALJ determined that ERH was not disabled.  This appeal followed.

### C.  Other Records

In his brief, ERH largely relies on testimony provided at the hearing as to his impairments, much of which is summarized  above.  In addition to the amputation injury to his dominant right hand, resulting in a number of surgical procedures immediately after the injury and subsequent surgery in June 2018 to address bone growth, ERH also notes that he sustained a fracture of his left proximal radius on August 9, 2014.  As for school records, ERH further emphasizes that, at times, he received accommodations, including printing out notes (rather than having to write them down), only requiring him to answer certain questions on a test, and taking his tests separate from the class due to difficulty with concentration.  (Pl.'s Opening Br. (dkt. #9) 9 (citing AR 213-15, 231, 236, 250).) During at least middle school, ERH also had behavioral problems, including getting in arguments with classmates and becoming a distraction in class (*id.* (citing AR 224, 235-37)), and now that ERH is in high school, he receives certain accommodations in his physical education classes (*id.* (AR 215)).   While still participating on his school's basketball team, he reports difficulties dribbling and concentrating and becomes upset with lack of playing time.  (*Id.* (AR 208, 215-16).)  ERH also stopped playing hockey because he could not hold the stick and the prosthetic was not comfortable, and he stopped playing baseball after his mother confronted the coach about ERH's treatment.  (*Id.* at 10 (AR 208-09, 216, 233-35).)

As for the use of a prosthetic, his doctors have given up on fitting him for one, because the prior myoelectric prosthetic was of limited use.  (*Id.* at 10 (citing AR 217, 232-33. 895, 919).)   ERH also frequently drops things, has difficulty feeding and bathing

himself, and depends on his mother to help with personal care.  (*Id.* (citing AR 210, 218-19, 233, 237, 475, 525).)  While he continues to hunt, ERH is restricted in the type of firearm he may use and must hunt with a companion.  (*Id.* at 12 (citing AR 220-21, 677).)

Finally, Dr. Grunert, ERH's treating psychologist, explained that ERH's lack of concentration was related to his PTSD diagnosis.  (*Id.* at 11 (citing AR 235-36).)  Moreover, items such as blenders remind him of his injury and are very stressful, causing him to "almost have a panic attack."  (*Id.* at 12 (citing AR 238).)

## OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner.  *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).  At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

For individuals under the age of 18, the SSA established a three-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.924(a). At step one, the ALJ must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.972(a). Here, the ALJ concluded that ERH was not. At step two, the ALJ must determine if the claimant has a "severe" medically determinable impairment or a combination of severe medically determinable impairments. 20 C.F.R. § 416.924(a). Here, the ALJ determined that ERH had two severe impairments -- one related to the physical injury to his hand and the other being PTSD arising from that injury. Accordingly, plaintiff's challenges turn on the ALJ's treatment of step three, which requires that the ALJ consider the combined effect of all medically determinable impairments to determine if the claimant has either an impairment or combination of impairments that meet or medically equal the severity of a listing or that functionally equals a listing. 20 C.F.R. §§ 416.923, 416.924a(b)(4) and 416.926a(a) and (c). A claimant is presumed disabled if the claimant has an impairment or combination of impairments that has lasted or is expected to last for 12 continuous months and meets or medically equals the severity of, or functionally equals, the listing. 20 C.F.R. § 416.924(d). To determine whether a claimant functionally equals the listing, the ALJ must determine the claimant's functioning in six domains, as described above in the ALJ's opinion. If a claim has "marked" limitations in two domains or an "extreme" limitation in one domain, the claimant is deemed to functionally equal the listings. 20 C.F.R. § 416.926a(a).

        As detailed above, ERH essentially raises challenges to the ALJ's treatment of two specific listings: (1) a challenge to the ALJ's treatment of ERH's physical limitations with

respect to Listing 101.08 (soft tissue injury); and (2) challenges to the ALJ's treatment of ERH's mental limitations with respect to Listing 112.15 (trauma- and stressor-related disorders).  Otherwise, ERH challenges the ALJ's findings that he has less than marked limitations with respect to at least two of the six recognized domains.[4]

## I.   Treatment of Physical Limitations

As detailed above, the ALJ concluded that ERH's injury to his right arm constituted a marked limitations with respect to domain 4 -- "moving and manipulating objects." Plaintiff does not contend that the ALJ should have concluded that he has an extreme limitation on this domain; instead, plaintiff argues that the ALJ erred in not finding that he met or medically equaled Listing 101.08, which concerns a soft tissue injury.

Listing 101.08 provides in pertinent part:

> Soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 101.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

---

[4] In his opening brief, plaintiff also complains about the ALJ's refusal to admit certain middle school education records, which were submitted after the hearing.  (Pl.'s Opening Br. (dkt. #9) 26.) Plaintiff's argument is delegated to a few lines on a single page of his brief.  In response, the Commissioner explains that the ALJ declined to admit these additional documents because they were submitted ten days after the hearing -- the rule requires evidence to be submitted no later than 4 days before the date of the scheduled hearing -- and ERH failed to offer "unusual, unexpected, or unavoidable circumstance[s]" to justify their late submission.  (Def.'s Opp'n (dkt. #11) 21 (citing 20 C.F.R. § 416.1435).)  Plaintiff dropped this argument in his reply brief, perhaps recognizing that he failed to develop it adequately in his opening brief.  Regardless, the court sees no grounds to remand based on this undeveloped argument.

20 C.F.R., pt. 404, subpt. P, app. 1 § 101.08.  In rejecting this listing, the ALJ found that the record "does not show a soft tissue injury to the body under continuing surgical management . . . , directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." (AR 23.)  As the Commissioner points out in his opposition brief, Dr. Cyd Campbell testified at the hearing that Listing 101.08 was not met or medically equaled because the purpose of the additional surgical procedure in 2018  was not for "salvage or restoration of major function."  (AR 250.)  Moreover, the records from his orthopedist reflects that there were no complications with his surgery requiring continuing surgical management; nor was there any other reference to a soft tissue injury for the year following surgery.  (AR 253-54.)

In contrast, plaintiff directs the court to the opinion of his treating surgeon, Dr Bentz, that "[t]his level of amputation is functionally substantial and significant, and by definition leaves him with long term disability and dysfunction." (AR 730.)  However, this opinion does *not* mean ERH's hand injury meets the definition of Listing 101.08.  Instead, as the Commissioner argues in opposition, Bentz's statement concerns ERH's amputation. Even more telling, plaintiff does not challenge the ALJ's treatment of Listing 101.05, which actually concerns amputations; and for good reason, since that listing requires *both* hands to be amputated to meet the listing.  20 C.F.R., pt. 404, subpt. P, app.1 § 101.05.  Plaintiff also points to Dr. Bentz's statements about ERH's May 2018 surgery to address bone growth, but again fails to explain how this surgery was directed toward the "salvage or restoration of major function."  Accordingly, the court must reject this basis for remand.

*See Sullivan v. Zebley*, 439 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

## II. Treatment of Mental Impairments

As the Appeals Council recognized in vacating the original denial and remanding to the ALJ for further consideration of plaintiff's PTSD diagnosis, his application turns on demonstrating that his mental impairment, when coupled with his physical injury, renders him disabled. On appeal to this court, plaintiff pursues two avenues for such a finding: (1) the ALJ erred in not finding that ERH met or medically equaled Listing 112.15 (trauma - and stressor-related disorders); and (2) the ALJ erred in failing to find plaintiff had marked limitations with respect to attending and completing tasks and interacting and relating with others. The court considers each challenge in turn.

*First*, Listing 112.15 provides:

> Trauma- and stressor-related disorders (see 112.00B11), for children age 3 to attainment of age 18, satisfied by A and B, or A and C:
>
> A. Medical documentation of the requirements of paragraph 1 or 2:
>
> 1. Posttraumatic stress disorder, characterized by all of the following:
>
> a. Exposure to actual or threatened death, serious injury, or violence;
>
> b. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

    c.  Avoidance of external reminders of the event;

    d.  Disturbance in mood and behavior (for example, developmental regression, socially withdrawn behavior); and

    e.  Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

. . .

    AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see112.00F):

    1.  Understand, remember, or apply information (see 112.00E1).

    2.  Interact with others (see 112.00E2).

    3.  Concentrate, persist, or maintain pace (see 112.00E3).

    4.  Adapt or manage oneself (see 112.00E4).

OR

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 112.00G2b); and

    2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see112.00G2c).

20 C.F.R., pt. 404, subpt. P, app. 1 § 112.15.

14

In his brief, plaintiff argues that the record establishes that he meets the requirements of paragraph A *and* C. [5] In support of this argument, plaintiff relies on various forms submitted by his treating psychologist, Dr. Grunert, addressing his PTSD diagnosis. No doubt, as the ALJ recognized, these letters support a finding that ERH suffers from PTSD, thus satisfying paragraph A. However, plaintiff stops short of providing any explanation as to how his condition satisfies paragraph C, other than simply stating that "Dr. Grunert's above opinions confirm that E.R.H.'s mental impairment is 'serious and persistent' and medially equals the 'C' criteria of Listing 115.12." (Pl.'s Opening Br. (dkt. #9) 19.). In contrast, as the Commissioner points out, Dr. Grunert discussed the applicability of Listing 112.15, ultimately concluding that ERH did *not* satisfy the paragraph B criteria and offered *no* opinion as to whether his condition satisfies paragraph C. (AR 821-23.)

Even more glaring, while plaintiff at least argues that his mental limitations were "serious and persistent," he stops short of developing any argument in support of finding the second prong of paragraph C. The regulations define "marginal adjustment" as

> your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 112.00D). Such deterioration may have necessitated a significant change in medication or other

---

[5] Plaintiff accepts the ALJ's findings that he does not meet the criteria of paragraph B.

treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from school, making it difficult for you to sustain age-appropriate activity over time.

20 C.F.R., pt. 404, subpt. P, app. 1 § 112.00G2c.

Here, the ALJ found "the record fails to document" that "the claimant has minimal capacity to adapt to changes in [his] environment or to demands that are not already part of their daily life." (AR 24.) The court agrees. If anything, the record reflects that Dr. Grunert employed normal counseling techniques, and there was no evidence that ERH could not function outside of the home or otherwise required hospitalization or significant psychiatric intervention. While ERH required *some* accommodations at school, and at times, his behavior was disruptive, he received grades of mostly Bs and Cs, engaged in various sports, and hunted. As a result, the court must reject Listing 112.15 as a basis for remand.

*Second*, plaintiff argues the ALJ erred in finding that he suffered from less than marked limitations with respect to two of the six functional domains. As described above, the ALJ concluded that ERH has marked limitations as to one domain -- moving about and manipulating objects -- but in order to be disabled, the ALJ would need to have found that he had marked limitations as to at least one other domain. While not entirely clear, ERH appears to argue that the ALJ should have found marked limitations with respect to two other domains -- attending and completing tasks and interacting and relating with others. In support, ERH points to various education records, including forms completed by teachers, that describe his challenges with being disruptive, paying attention, and

16

completing homework.  (Pl.'s Br. (dkt. #9) 23-25.)  Here, too, however, plaintiff fails to explain how this evidence demonstrated a marked limitation in either of the identified domains.  *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("a teacher's description of a child's daily behavior [does not] qualif[y] as medical evidence").

Moreover, the ALJ did not ignore these records; rather, he found that they had provided some "insight to the claimant's condition and ability to function."  (AR 29.)  In the end, however, the ALJ relied on medical experts to determine whether plaintiff had marked limitations in any of the domains.  Specifically, Dr. Martinez testified at the hearing that ERH had no more than marked limitations in all of the functional domains, other than moving about and manipulating objects.  (AR 28.)  And while Dr. Grunert did not evaluate ERH on the six domains, he did provide an opinion as to his degree of limitations with respect to paragraph B for Listing 112.15, concluding that ERH had mild or moderate limitations with respect to each of those four categories.  Because those categories -- understanding, remembering and applying information, interacting with others, maintaining concentration, persistence and pace, and in adapting or managing oneself -- have significant overlap with the six domains, the ALJ reasonably placed considerable weight on Dr. Grunert's opinions, which further support the ALJ's conclusion that ERH has less than marked limitations in five of the domains.

To be fair, Dr. Cyd Campbell, M.D., did opine that ERH had had marked limitations in attending and completing tasks as of February 2018, but the ALJ was permitted to discount this opinion -- by a non-treating provider – in favor of Dr. Martinez's opinion.  Specifically, the ALJ concluded that Dr. Campbell's opinion was based solely on

17

the 2018 IEP, and that Dr. Martinez, who testified that she "writes IEPs and is familiar with how they are written and prepared" did not find that claimant's 2018 IEP w[as] supporting of any marked limitation in attending and completing tasks." (AR 28.) At minimum, therefore, the ALJ articulated a logical bridge for discounting Dr. Campbell's opinion. For these reasons, the court also rejects plaintiff's challenge to the ALJ's detailed analysis of the six functional domains.

## ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff E.R.H.'s application for disability insurance benefits is AFFIRMED. The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 8th day of October, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge